UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-24609-CIV-WILLIAMS

ALLAN LOPEZ,

    Plaintiff,

vs.

PATRICIA MARTENS and
XPO LOGISTICS FREIGHT, INC.,

    Defendants.
_____/

## OMNIBUS ORDER

**THIS MATTER** is before the Court on Magistrate Judge Edwin G. Torres's Report and Recommendation on Plaintiff's Motion to Remand. (DE 34). Following the Report and Recommendation, Defendant XPO Logistics Freight, Inc. filed a Motion to Dismiss Defendant Patricia Martens (DE 35) and objections to the Report (DE 36). The Court held a telephonic hearing on the motions and objections on September 18, 2020. (DE 41). For the reasons set forth below, the Court denies Defendant XPO's Motion to Dismiss, adopts the Report in part, and grants Plaintiff's Motion to Remand (DE 30).

### I.    BACKGROUND

On September 24, 2019, Plaintiff filed a personal injury lawsuit in Florida state court, alleging negligence against Ms. Martens and vicarious liability against XPO under the doctrine of "Master/Servant," or *respondeat superior*, for a car accident that took place in Miami-Dade County. (DE 1-1). Plaintiff served Defendant XPO on October 7, 2019 and XPO filed an answer on October 24, 2019 (DE 1-9). Plaintiff states that he attempted to

serve Ms. Martens during the month after he filed his complaint in Florida state court. To date, Plaintiff has failed to serve Ms. Martens.[1]

On November 6, 2019, XPO filed a notice of removal stating that this case fell within the Court's diversity jurisdiction because the parties were citizens of different states at the time of removal, and the amount in controversy exceeded $75,000. (DE 1). XPO claimed that it was a multi-national business with its corporate headquarters and principal place of business in Connecticut and that Plaintiff was a citizen of Florida. Although Plaintiff had failed to serve Ms. Martens at the time of removal, XPO contended that she was a U.S. citizen with a permanent domicile in Japan.

After this case was removed to this Court in November 2019, **Plaintiff made no further attempts to serve Ms. Martens**. (DE 30). From November 2019 to July 2020, Plaintiff and Defendant XPO litigated the case without Ms. Martens. They entered a scheduling report (DE 6), and the Court entered a Scheduling Order (DE 7). They made initial disclosures, disclosed witnesses, and disclosed experts. They moved for an extension of time to complete discovery (DE 22), which the Court granted, resetting the discovery deadline to August 14, 2020 (DE 23). The deadline to file dispositive motions was August 14, 2020, but the Court *sua sponte* continued the deadline to August 31, 2020 upon granting the requested discovery extension. The deadline to file motions to amend pleadings or join parties was March 1, 2020, but neither party requested a continuance of that date. Finally, Plaintiff and Defendant XPO attended mediation.

---

[1] The record shows Caplan, Caplan and Caplan process servers made two unsuccessful attempts to serve Ms. Martens with the state court summons. (DE 32-3).

2

In the Mediation Report, the Mediator indicated that Ms. Martens did not attend mediation because she had still not been served as of the July 8, 2020 mediation. (DE 26). Upon reviewing the Mediation Report, the Court entered an order to show cause (DE 27) why Ms. Martens should not be dismissed from this action. In response to the order to show cause, Plaintiff filed the current Motion to Remand approximately seven months after the date to move for remand "on the basis of any defect other than lack of subject matter jurisdiction" had passed. *See* 28 U.S.C. § 1447.

On September 18, 2020, the Court held a telephonic hearing on the motions. During the hearing, Plaintiff "[fell] on his sword," acknowledging he should have moved for an extension of time to serve Ms. Martens after removal. But Plaintiff provided no reason to the Court why Plaintiff made no further attempts to serve Ms. Martens other than that she is located in Japan—something that was known or should have been known to Plaintiff as early as November 6, 2019 when Defendant XPO filed its Notice of Removal (DE 1 at ¶ 4). During the hearing, Plaintiff stated he needed to, at the very least, depose Ms. Martens. However, Plaintiff failed to ask for a continuance of the discovery deadline to depose Ms. Martens or seek any Court assistance in obtaining testimony from Ms. Martens in order to protect his rights and prosecute his case.

## II.   LEGAL STANDARD

If a case is removed under section 1332(a), there must be (1) complete diversity between the parties, and (2) there must be an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"). Removal statutes are narrowly construed with

uncertainties resolved in favor of remand. *See Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998); *see also Morock*, 2007 WL 1725232, at *1 ("A federal district court must remand to state court any case [that] lacks necessary jurisdiction or that was removed improperly.") (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). For purposes of § 1332(a), a U.S. citizen who is not domiciled in any state is a stateless party, and a stateless defendant destroys complete diversity for the purposes of diversity jurisdiction. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989).

However, it is also "well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time, even after judgment has been rendered." *Id.* at 832 (finding that diversity jurisdiction under 1332(a) can be maintained where there is a dispensable non-diverse party). "[F]ederal courts 'must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980)). There is no bright-line rule for distinguishing between real and nominal parties. *Id.* The Eleventh Circuit has defined "nominal or formal parties" as those that are "'neither necessary nor indispensable' to the action." *Id.* (quoting *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349*, 427 F.2d 325 (5th Cir. 1970)). "[T]he ultimate test for whether a defendant is nominal is whether in the absence of the defendant, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." *Thermoset Corp.* 849 F.3d at 1317 (quotation omitted).

In *Thermoset Corp.*, the court held "Federal Rule of Civil Procedure 21 gives us the power to dismiss a non-diverse party . . . in order to preserve jurisdiction over the rest of the case" if no party would be prejudiced by the dismissal. *Id.* at 1318−19. To determine whether a party would be prejudiced by the dismissal:

> this prejudice determination requires us to look at two factors. First, we must decide whether the non-diverse party is "indispensable" under Federal Rule of Civil Procedure 19. If the non-diverse party is indispensable, then we must dismiss the entire case for lack of subject-matter jurisdiction—we cannot dismiss the non-diverse party and keep the rest of the case. Second, if the non-diverse party is not indispensable, we must inquire whether the presence of the non-diverse party provide[s] the other side with a tactical advantage in the litigation.

*Id.* at 1319 (quotations and citations omitted). For the first factor—indispensability—Rule 19 requires the Court to first determine if the party is "required." *Id.* Next, the Court must ask whether "in equity and good conscience, the action should proceed" without that party. *Id.* (quoting Fed. R. Civ. P. 19).

In Florida, the doctrine of *respondeat superior* is well recognized. The Florida Supreme Court has held:

> An employer is vicariously liable for compensatory damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault. This is based upon the long-recognized public policy that victims injured by the negligence of employees acting within the scope of their employment should be compensated even though it means placing vicarious liability on an innocent employer.

*Univ. of Miami v. Ruiz ex rel. Ruiz*, 164 So. 3d 758, 766 (Fla. Dist. Ct. App. 2015) (quoting *Mercury Motors Exp., Inc. v. Smith,* 393 So.2d 545, 549 (Fla.1981)). In order for an employer to be liable for the employee's acts under this theory, a plaintiff has to present "sufficient evidence for a reasonable juror to conclude that [the employee] was acting for the benefit of his employer at the time and place of the accident—either by performing the kind of work he was hired to do, by serving a purpose of his employer, or by committing

5

the act when he was working." *Jones v. Latex Const. Co.*, 460 F. App'x 842, 844 (11th Cir. 2012) (citing *Sussman v. Fla. E. Coast Properties, Inc.,* 557 So.2d 74, 75–76 (Fla. 3d DCA 1990)).

### III.    DISCUSSION

#### A.  Diversity Jurisdiction

For the reasons set forth in the Report, the Court finds that Defendant Martens is a stateless defendant. As discussed in the Report, her status as a stateless party spoils this Court's diversity jurisdiction. Defendant XPO argues that removal was proper under § 1441 (b)(2), which provides that "a civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly *joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441 (b)(2) (emphasis added). This is known as the "forum defendant" restriction. Removal before a forum defendant has been served is often referred to "snap removal," and many courts have deemed it proper. *See e.g.*, *Encompass Ins. Co. v. Stone Mansion Restaurant, Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("Starting with the text, we conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served"); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a forum defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action"); *Texas Brine Co. v. Am. Arbitration Assoc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("A non-forum

defendant may remove an otherwise removable case even when a named defendant who has yet to be "properly joined and served" is a citizen of the forum state.").

However, even where snap removal is proper because a forum defendant has not yet been served in an action, the action must still be "otherwise removable solely on the basis of the jurisdiction under section 1332(a)." § 1441 (b)(2). Even if courts only look to the served defendants to satisfy the forum defendant restriction, the Eleventh Circuit has made clear that for the purposes of *diversity jurisdiction*, courts must look to the plaintiff's pleading at the time of removal. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 948 (11th Cir. 2000) ("with regard to whether the parties are diverse, removability should be determined according to the plaintiff's pleading at the time of the petition for removal."). Therefore, although Ms. Martens has not been served, her inclusion as a defendant in Plaintiff's pleading at the time of removal destroys complete diversity.

B. Dispensability of Ms. Martens

Nonetheless, the question that remains to be addressed is whether Ms. Martens is a nominal, dispensable party. First, the Court must determine whether any party would be prejudiced by Ms. Martens' dismissal. During the Hearing, Plaintiff conceded Ms. Martens would not be financially responsible for an adverse judgment if Plaintiff prevails in this action. (DE 41). Further, Plaintiff's pleading names Defendant XPO only on theories of vicarious liability as Ms. Martens' employer rather than on other theories of direct liability. (DE 1-1). However, in Defendant XPO's answer to the Complaint, XPO denies, "as phrased," the allegation that XPO was the owner of the automobile that was being operated by Ms. Martens at the time of the alleged car accident. (DE 1-9 at ¶ 6). XPO denies, "as phrased," the allegation that Ms. Martens was operating the automobile

owned, maintained, and/or controlled by XPO with XPO's knowledge, permission, and/or consent at the alleged location of the alleged accident. (DE 1-9 at ¶ 7). Further, XPO asserts various affirmative defenses that could absolve it of vicarious liability under Florida law while still leaving Ms. Martens liable. (DE 1-9 at 2−6).

Like *Thermoset Corp.*, where the Eleventh Circuit found dismissing the non-diverse party would put the plaintiff at risk of receiving inadequate relief, 849 F.3d 1313, the same risk exists here due to Defendant XPO's pleadings. In that case, the remaining diverse defendant argued the non-diverse defendant could be deemed nominal since the diverse defendant agreed to defend and fully indemnify the non-diverse defendant for any losses resulting from an adverse judgment. 849 F.3d at 1318. Given that there were "plausible scenarios" in which the non-diverse defendant's absence could prevent the plaintiff from recovering all of its damages, those arguments were not sufficient. In this case, Defendant XPO could prevail on the theory that it did not own the car, Ms. Martens did not have permission to use the car, or Ms. Martens was not acting within the scope of her employment at the time of the alleged accident, as set out in its affirmative defenses. Therefore, Ms. Martens is a required party as both she and Plaintiff could be prejudiced by her absence from this action.

Next, the Court asks "whether in equity and good conscience" the Court could proceed without Ms. Martens. *See Thermoset Corp.*, 849 F.3d at 1319 ("If RSGO is "required," then we move to a second step and ask whether "in equity and good conscience, the action should proceed" without RSGO under [Rule 19] subsection (b)."). The fact is that Plaintiff litigated the case without serving Ms. Martens for approximately eight months, and the record indicates Plaintiff would have continued indefinitely had the

Court not entered an order to show cause. Moreover, Plaintiff's response to the Court's order to show cause fails to offer any reason for Plaintiff's failure to serve Ms. Martens in the many months since filing this action while proceeding with the litigation. In the Court's opinion, Plaintiff should not be rewarded in any way for failing to protect his asserted right to relief, prosecute this case, and conduct discovery[2] within the time limits set by the Court.

However, given Defendant XPO's affirmative defenses, Defendant XPO's interests are not completely aligned with Ms. Martens'. Therefore, in light of the pleadings and the fact that Ms. Martens is not here to protect her interests, the Court cannot under the rubric of "equity and good conscience" allow this case to proceed without her. For this reason, the entire matter must be remanded.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Report (DE 34) is **ADOPTED IN PART** to the extent that it finds Defendant Martens is a non-diverse party.

2. Defendant XPO's Motion to Dismiss Defendant Martens (DE 35) is **DENIED**.

3. Plaintiff's Motion to Remand (DE 30) is **GRANTED**. This action is **REMANDED** to the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.

4. The Clerk is directed to **CLOSE** this case.

---

[2] During the Hearing, Defendant XPO stated it has taken a deposition in this matter and Plaintiff has taken none. As noted previously, the discovery deadline has passed.

**DONE AND ORDERED** in chambers in Miami, Florida, this 24th day of September, 2020.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE